**NOT FOR PUBLICATION**                                                    **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILSON X. BEZERRA, | Civil Action No.: 07-5670 (JLL) |
| Plaintiff, | |
| v. | |
| FRANK DeLORENZO, et al., | **OPINION** |
| Defendants. | |

**LINARES**, District Judge.

<u>**INTRODUCTION**</u>

This matter arises out of Plaintiff's efforts to secure building permits to construct an addition to his home and to construct a modular house on another property. Both properties were located in Belleville, New Jersey. With respect to the room addition project, Plaintiff claims that the Township of Belleville's Construction Code Official and Zoning Officer, Frank DeLorenzo, deliberately and maliciously delayed conducting the necessary inspections and failed to look into problems with the header beam installation, which resulted in a header beam falling, causing considerable damage to the property. With respect to the modular house project, Plaintiff contends that DeLorenzo deliberately and maliciously caused further delays by raising numerous objections to paperwork and alleging that the project was not being constructed in accordance with the plans submitted. Plaintiff claims that, in doing so, DeLorenzo abused the power of his position in violation of state law. In addition, Plaintiff claims that DeLorenzo's conduct, and the Township's Manager's ongoing acquiescence in same, deprived Plaintiff of his property interest in violation of his constitutional

1

rights pursuant to 42 U.S.C. § 1983.

Currently before the Court are three motions for summary judgment filed by Plaintiff and Defendants, respectively.  Plaintiff seeks summary judgment solely as to Defendant Lorenzo's immunity defense pursuant to the New Jersey Tort Claims Act.  Defendants jointly seek summary judgment as to Counts One and Two of Plaintiff's Complaint.[1]  The Court has considered the submissions made in support of and in opposition to the instant motions.  No oral argument was heard. Fed. R. Civ. P. 78.  For purposes of ease and efficiency, the Court first considers the motion for summary judgment filed by the law firm of Gebhardt & Kiefer, PC on behalf of Defendants DeLorenzo and Kimble, jointly.  Based on the reasons that follow: (1) Defendants' motion for summary judgment is granted as the section 1983 claim, (2) Plaintiff's state law claim is remanded to the state court pursuant to 28 U.S.C. § 1367(c)(3) and <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 357 (1988), and (3) Plaintiff's motion for partial summary judgment on the issue of Defendants' entitlement to immunity pursuant to the New Jersey Tort Claims Act is denied as moot.

## <u>LEGAL STANDARD</u>

A court shall grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party

---

[1] The Court notes that Defendants Frank DeLorenzo and Raymond Kimble have jointly filed two separate motions for summary judgment. It appears that the law firm of Gebhardt & Kiefer, PC represents defendants DeLorenzo and Kimble in connection with certain "covered claims" whereas the law firm of Day Pitney represents said defendants in connection with certain "non-covered claims."  Leave to file two separate motions for summary judgment on behalf of the same two defendants was granted by Magistrate Judge Claire C. Cecchi.

first must show that no genuine issue of material fact exists. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. <u>Id.</u> at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact and may not simply rely on unsupported assertions, bare allegations, or speculation. See <u>Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999). Also, the Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. See <u>Pa. Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995).

## **BACKGROUND**

**1.      585 Joralemon Street**

On October 10, 2002, Plaintiff, Wilson Bezerra, purchased a property located at 585 Joralemon Street in Belleville, NJ from his brother (hereinafter referred to as the "Property"). (Def. 56.1 Stmt., ¶ 1; Pl. Responsive Stmt., ¶ 1).[2]  Plaintiff decided to build a two-story two-family prefabricated residential house on the Property. (<u>Id.</u>, ¶ 2). Township of Belleville Regulation 23-3 provides, in pertinent part, that the maximum stories allowed in the R-B two-family zoning district in which the Property is located are two and one-half. (<u>Id.</u>, ¶ 3).  The maximum height in that zone is 35 feet. (<u>Id.</u>).

At some point between September and November 2002, Plaintiff filed a construction permit

---

[2]  Because the Court first considers the motion for summary judgment filed by the law firm of Gebhardt & Kiefer, PC on behalf of Defendants DeLorenzo and Kimble, the Court refers to the Statement of Undisputed Material Facts which they submitted, as well as Plaintiff's statement in response thereto.

application with the Township of Belleville to build a modular home on the Property. (Id., ¶ 7). In November 2002, the Township of Belleville notified the Plaintiff via letter that certain additional items had to be submitted "for approval." (Id., ¶ 8). Plaintiff's construction permit application was determined to be complete at some point between February and March 2003 and the permit was issued by the Township's Construction Code Official and Zoning Officer, Frank DeLorenzo, in March 2003. (Id., ¶ 13). All plans submitted by the Plaintiff were for a two-story prefabricated structure. (Id., ¶ 14).

On March 17, 2003, DeLorenzo conducted a footing inspection at the Property. (Id., ¶ 15). At that point, DeLorenzo told the Plaintiff that he could not allow the project to proceed because Plaintiff had not submitted a foundation drawing sealed by an engineer. (Def. 56.1 Stmt., ¶ 17). Plaintiff claims that he had already provided DeLorenzo with the foundation drawing sealed by the engineer on several prior occasions. (Pl. Responsive Stmt., ¶ 17). On the same day, Plaintiff claims that DeLorenzo attempted to solicit a bribe from him. (Def. 56.1 Stmt., ¶ 19; Pl. Responsive Stmt., ¶ 19). In this regard, Plaintiff testified to the following:

> And that's when he leans up against the car and he just stood there and at that point I felt that he was looking for something. And it wasn't the seal and I waited. We both were just looking at each other and finally I said I had the feeling this guy was looking for a bribe. And at that point I said, I'm not gonna go there.

(Bezerra Dep Tr. (June 14, 2007) at 64:15-21, Harris Dec., Ex 17).

Although the parties dispute when DeLorenzo first received a copy of the sealed drawing, it is undisputed that by March 18, 2003, DeLorenzo was in receipt of such document and advised Plaintiff on that date that his project could proceed. (Id., ¶ 23). Construction on the Property began shortly thereafter.

4

After receiving complaints from at least one neighbor, DeLorenzo conducted an inspection of the Property during the last week of March.  (Def. 56.1 Stmt., ¶ 24; Pl. Responsive Stmt., ¶ 24). At that point, DeLorenzo discovered that Plaintiff had constructed a three-story dwelling on the Property.  (Id., ¶ 24).  As a result, DeLorenzo issued a Stop Work Order for violation of N.J.A.C. 5:23-2.16 and advised Plaintiff of said violation. (Id., ¶ 25).   According to one member of the work crew, once the Stop Work Order was issued, they were told by DeLorenzo that if anyone touched the building, they would be arrested. (Pl. Responsive Stmt., ¶ 26; Casner Dep. Tr. 40:25-41:6). Thus, the work crew was not permitted to raise the roof ; they did, however, install a tarp on the roof before vacating the premises.   (Id., ¶ 26).  Shortly thereafter, DeLorenzo issued Plaintiff with approximately 47[3] summonses for violations of various Township ordinances, at least some of which were directed by the Municipal Prosecutor. (Id., ¶ 27).

Plaintiff subsequently filed an appeal of the Stop Work Order to the Essex County Construction Board of Appeals. (Def. 56.1 Stmt., ¶ 28; Pl. Responsive Stmt., ¶ 28).  On April 29, 2003, the Board of Appeals upheld the Stop Work Order issued by DeLorenzo, finding, in pertinent part, that "based on the testimony and representations made by the parties, the structure at issue is a three (3) story building while the permit issued was for a 2 to 2 and one-half (2 ½) story building." (Id., ¶ 29; Fodera Cert., Ex. Q).  The Board of Appeals did, however, lift the Stop Work Order for a period of fifteen (15) days to enable Plaintiff to install a roof truss system. (Id.).

In May 2003, Plaintiff filed an application with the Township of Belleville Zoning Board of Adjustment requesting, in pertinent part, an interpretation of the ordinance containing the "2 ½ story limitation" or, in the alternative, a variance  from said ordinance. (Def. 56.1 Stmt., ¶ 30; Pl.

---

[3] See Harris Decl., Ex 41.

Responsive Stmt., ¶ 30) (Fodera Cert., Ex S at 5).  On July 15, 2003, the Zoning Board conducted a public hearing and heard testimony regarding Plaintiff's application. (Id.).  An engineering firm retained by the Township of Belleville reviewed the plans submitted by the Plaintiff and prepared a report stating that "the structure currently under construction at the subject property is inconsistent with the submitted architectural plans.  The plans indicate that the basement floor level is substantially beneath the surface of the ground, whereas, photos of the property show the basement floor at ground surface elevation." (Id.) (Fodera Cert., Ex. V).  On August 5, 2003, the Zoning Board issued a Resolution concluding that the structure was in fact a three-story dwelling and denying Plaintiff's application for a bulk variance to allow a three-story structure on said premises. (Id., ¶ 32) (Fodera Cert., Ex W).  Plaintiff did not appeal the denial by the Zoning Board to the Superior Court of New Jersey. (Def. 56.1 Stmt., ¶ 35; Pl. Responsive Stmt., ¶ 35).  Plaintiff claims that such resolution was based upon false testimony provided by DeLorenzo at the July 15 and August 5, 2003 hearings.

Plaintiff subsequently disassembled the three-story structure and constructed a two-story structure on the Property. (Def. 56.1 Stmt., ¶ 36; Pl. Responsive Stmt., ¶ 36). By October 2003, all summonses which had been issued to Plaintiff were dismissed with no fines being assessed. (Id., ¶ 37).  A final inspection of the Property was conducted by the Township in January 2005 and a certificate of occupancy was issued several days later.  (Id., ¶ 38).  On January 31, 2005, Plaintiff sold the Property. (Id., ¶ 39).

Plaintiff subsequently filed a complaint against DeLorenzo with the New Jersey State Department of Community Affairs ("DCA"), the agency responsible for overseeing the activities of municipal construction officials. (Def. 56.1 Stmt., ¶ 40; Pl. Responsive Stmt., ¶ 40).  The DCA

conducted an investigation into Plaintiff's allegations regarding DeLorenzo's actions leading up to and following his issuance of the Stop Work Order and found no wrongdoing on his part. (Id.). The DCA noted that Plaintiff's issues with the delay in obtaining his permit were caused by zoning approval and height requirements imposed by Township ordinance, both of which were zoning issues and thus beyond the DCA's jurisdiction. (Fodera Cert., Ex. Y). The DCA concluded that "DeLorenzo was acting accordingly when he issued the Stop Construction Order to Mr. Bezerra. Mr. DeLorenzo saw a three-story house being built when in fact the plans indicated the construction of a two-story house." (Id.).

During this time, Raymond Kimble served as Township Manager. (Pl. Supplemental Stmt., ¶ 1).[4] As Township Manager, Kimble was responsible for "the every day operation of the township, seeing that all the rules regulations are carried out." (Id., ¶ 2; Kimble Dep. Tr. (Sept. 12, 2007) at 9:9-11, Harris Supplemental Decl., Ex. 1). The office of the Township Manager had no established procedure or protocol in place for handling citizen complaints. (Pl. Supplemental Stmt., ¶ 10; Canning Dep. Tr. At 22:7-13, Harris Supplemental Decl., Ex 2). After DeLorenzo issued the Stop Work Order, Plaintiff spoke with Kimble and his assistant, Victor Canning, on more than one occasion, regarding the problems he was having with DeLorenzo. (Pl. Supplemental Stmt., ¶ 11; Bezerra Dep. Tr. (Dec. 23, 2008) at 149:12-150:18). Plaintiff also dropped off a binder of paperwork concerning the two development projects for Kimble with Canning; Canning gave that binder to Kimble. (Pl. Supplemental Stmt., ¶ 19; Canning Dep. Tr. (Sept. 12, 2007) at 2-18).

---

[4] Plaintiff has submitted a Supplemental Statement of Disputed Material Facts in opposition to Defendant's motion for summary judgment pursuant to Local Civil Rule 56.1. Local Civil Rule 56.1 provides that "[t]he movant shall respond to any such supplemental statement of disputed material facts as above, with its reply papers." Defendants have failed to do so.

However, Kimble testified that he had no recollection of having been copied on any letters from DeLorenzo to the Plaintiff, of having had any conversations with Canning regarding the Plaintiff or of having received Plaintiff's binder. (Pl. Supplemental Stmt., ¶ 25; Kimble Dep. Tr. (Sept. 12, 2007) at 31:15-24; 37:2-5).

Plaintiff has asserted claims in this matter against his former engineer, Frank Matarazzo (and related entities), for committing professional malpractice with regard to engineering services he provided in connection with construction of the modular home. (Def. 56.1 Stmt., ¶ 42; Pl. Responsive Stmt., ¶ 42).  In particular, Plaintiff claims that "the Matarazzo defendants negligently and carelessly failed to exercise the degree and skill required of professional engineers licensed by the State of New Jersey, in that they, among other things, deviated from generally accepted standards in preparing, submitting and allowing the building at 585 Joralemon Street to be constructed in violation of Township of Belleville Ordinances." (Compl., ¶ 182).  In addition, Plaintiff's Complaint alleges that "[h]ad the Matarazzo defendants fulfilled their duty of care, they would have, among other things, properly advised plaintiff and would have prepared and submitted plans and other documents to the Township of Belleville for the building at 585 Joralemon Street that complied with all applicable Township of Belleville ordinances." (Compl., ¶ 183). DeLorenzo had relied upon Matarazzo's engineering plot plan in determining the level at which the foundation was to be placed and in ultimately granting the Plaintiff a building permit. (Def. 56.1 Stmt., ¶ 46; Pl. Responsive Stmt., ¶ 46).

**2.   9 Elena Place**

Also in 2002, Plaintiff decided to build an addition onto his house located at 9 Elena Place in Belleville, NJ (hereinafter referred to as "9 Elena Place.") (Def. 56.1 Stmt., ¶ 47; Pl. Responsive

8

Stmt., ¶ 47).  Plaintiff served as the general contractor. (<u>Id.</u>).  Plaintiff alleges that DeLorenzo: (a) purposely and unnecessarily refused to perform a footing inspection at 9 Elena Place within three (3) days after construction began as provided for under Section 23-2.16, Title 5 of the New Jersey Administrative Code (Compl., ¶ 85), (b) intentionally, willfully and maliciously refused to perform the necessary framing inspection in a timely manner (Compl., ¶ 87), and (c) intentionally and maliciously failed to "look into" an issue regarding the header beam which was specifically brought to his attention by the Plaintiff and that the beam subsequently gave way causing considerable damage to the property (Compl., ¶ 88). The parties dispute whether Plaintiff ever brought the alleged issue regarding the header beam to the attention of the contractor who actually installed the header beam. (Def. 56.1 Stmt., ¶ 49; Pl. Responsive Stmt., ¶ 49).

In light of the foregoing, Plaintiff commenced the instant cause of action by filing a complaint in the Superior Court of New Jersey, Law Division, Essex County, in March 2005. Plaintiff filed an amended complaint in August 2005.  In the initial complaint, Plaintiff alleged that the Township of Belleville negligently supervised its employees, acted arbitrarily and unreasonably with respect to the approval of Plaintiff's construction plans, and selectively prosecuted him.  In the amended complaint, Plaintiff alleged that DeLorenzo selectively prosecuted and persecuted him, abused the power of his position, and acted maliciously, intentionally, and willfully.

In September 2005, defendants filed a motion to dismiss Plaintiff's complaint.  In October 2005, the trial court dismissed Plaintiff's complaint with prejudice as to both defendants, DeLorenzo and Township of Belleville.  Plaintiff appealed. In August 2006, the Appellate Division affirmed the dismissal of the claims asserted against the Township of Belleville and reversed and remanded solely

as to claims asserted against DeLorenzo. See Bezerra v. Twp. of Belleville, 2006 WL 1971807 (N.J. Super. App. Div. July 17, 2006). In doing so, the Appellate Division noted that dismissal of claims asserted against DeLorenzo was premature given the early stage of the litigation. In November 2007, Plaintiff filed a second amended complaint to add an additional claim against DeLorenzo and to name Mayor Raymond Kimble as a defendant. The second amended complaint alleged that Defendants' actions violated, inter alia, Plaintiff's civil rights pursuant to 42 U.S.C. § 1983.

Defendants DeLorenzo and Kimble filed a Notice of Removal with this Court on November 27, 2007. Plaintiff filed a Third Amended Complaint in July 2008 to add a claim for malpractice against his former engineer, Frank Matarazzo, Matarazzo Engineering, LLC and Matarazzo & D'Onofrio Engineering, LLC (hereinafter "Matarazzo Defendants"). Plaintiff reached a confidential settlement with the Matarazzo Defendants in June 2009.

Count One of Plaintiff's Third Amended Complaint (hereinafter referred to as "Complaint") alleges that DeLorenzo abused the power of his position by maliciously, intentionally, and willfully (a) causing unnecessary delays to both projects, (b) refusing to perform a footing inspection in connection with the room addition project, and (c) selectively prosecuting and persecuting Plaintiff in connection with various aspects of the modular home project, in violation of state law. Count Two of Plaintiff's Complaint alleges that DeLorenzo's conduct and Kimble's acquiescence in same violated Plaintiff's substantive due process rights.

## DISCUSSION

This Court's jurisdiction over the instant matter is premised 28 U.S.C. § 1331. Accordingly, the Court begins its analysis with Defendants' motion for summary judgment as to

10

Plaintiff's substantive due process claim.

<u>Count Two – Substantive Due Process Claim</u>

Plaintiff claims that Defendants, while acting under color of state law, deprived Plaintiff a protected property interest in violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983.[5] In particular, Plaintiff claims that DeLorenzo violated Plaintiff's substantive due process rights by engaging in a "campaign of obstruction and harassment" to prevent completion of Plaintiff's land development projects. (Pl. Opp'n Br. at 49).

In addition, Plaintiff claims that during the time in question, the Township of Belleville had an unwritten policy or custom in place of accepting as final and true the actions and statements of the construction Zoning Officer and of ignoring and/or thwarting citizen complaints. (Pl. Opp'n Br. at 54). Plaintiff further alleges that Kimble, in his capacity as Township Manager, was a policymaker for the Township. Thus, in failing to investigate Plaintiff's complaints of misconduct, Plaintiff claims that Kimble violated Plaintiff's substantive due process rights by acquiescing in the Township's improper practices or customs. (<u>Id.</u>).

---

[5] Section 1983 states in relevant part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.

1.      **Section 1983**[6]

To establish section 1983 liability, a plaintiff must show "that the official acting under color of state law caused the deprivation of a federal right." Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)).[7] This is because section 1983 itself is not a source of substantive rights, but provides a vehicle for vindicating the violation of rights created by the United States Constitution or federal law. See Graham v. Connor, 490 U.S. 386, 393-94 (1989); Morse v. Lower Merion School Dist., 132 F.3d 902, 907 (3d Cir. 1997). Thus, in particular, Plaintiff alleges that Defendants' conduct – in engaging in a campaign of harassment to prevent completion of Plaintiff's land development projects – deprived Plaintiff of his property in violation of the substantive component of the Fourteenth Amendment's Due Process clause.

2.      **Substantive Due Process**

"A property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are 'arbitrary, irrational, or tainted by improper motive,' or by means of government conduct so egregious that it 'shocks the conscience.' " Nicholas v.

---

[6] Defendants seek dismissal of Plaintiff's section 1983 claim on the basis that it is barred by the applicable two-year statute of limitations. Defendants argue, generally, that Plaintiff was aware of his alleged claims against DeLorenzo as early as July 2002 but did not assert a claim pursuant to section 1983 against DeLorenzo until November 2007. Plaintiff, on the other hand, claims that (a) any statute of limitations defense was waived by the Defendants, and (b) the section 1983 claims are, in any event, timely, inasmuch as they relate back to the date of the filing of Plaintiff's original pro se complaint (in 2005). Having carefully considered both arguments, the Court finds that neither side has adequately briefed this fact-intensive issue. Accordingly, the Court declines to dismiss Plaintiff's section 1983 claims on such a basis.

[7] Defendants do not dispute that they are state actors for purposes of the § 1983 claim.

Pennsylvania State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (citations omitted).[8] However, to prevail on a non-legislative substantive due process claim, Plaintiff must first establish that he has a protected property interest to which the Fourteenth Amendment's due process protection applies. See, e.g., Hill v. Borough of Kutztown, 455 F.3d 225, 235 n. 12 (3d Cir. 2006); Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 427 (3d Cir. 2003); Nicholas, 227 F.3d at 140. In addition, Plaintiff must establish a causal link between the constitutional violation alleged and the harm that Plaintiffs claim followed it. See, e.g., Miller v. City of Philadelphia, 174 F.3d 368, 374 n. 5 (3d Cir. 1999).

### A.    Qualified Immunity

Defendants claim that they are entitled to qualified immunity from Plaintiff's section 1983 claim, and are thus shielded from suit. See generally Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). "The Supreme Court has set forth a two-step objective reasonableness test to determine whether qualified immunity should be granted." Barton v. Curtis, 497 F.3d 331, 335 (3d Cir. 2007). The threshold inquiry, in determining whether a party is entitled to qualified immunity is whether, viewing the facts in the light most favorable to Plaintiff, the facts alleged show that Defendants' conduct violated a constitutional right. See, e.g., Saucier, 533 U.S. at 201; Wright, 409 F.3d at 600. Thus, Plaintiff bears the initial burden of showing that Defendants' conduct violated a constitutional right. See, e.g., Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). "If no constitutional right would have been violated were the

---

[8] See generally United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392, 400 (3d Cir. 2003) (clarifying that "executive action violates substantive due process only when it shocks the conscience.").

allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

However, if a favorable view of the Plaintiff's submissions reveals the violation of a constitutional right, this Court must determine whether such a right was clearly established. See id.; Wright, 409 F.3d at 600. To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." See Saucier, 533 U.S. at 202; Barton, 497 F.3d at 335. Plaintiff, again, bears the burden of demonstrating that the constitutional or statutory rights at issue were clearly established. See, e.g., Sherwood, 113 F.3d at 399. If the Court finds that Defendants violated such clearly established constitutional or statutory rights, they are not entitled to qualified immunity for their actions. See, e.g., Wright, 409 F.3d at 599-600.

### (i). Violation of a Constitutional Right

It is clear that, as a threshold matter, in adjudicating Plaintiff's section 1983 claim, the Court must consider whether a constitutional violation occurred. See Saucier, 533 U.S. at 201. Similarly, in assessing Defendants' qualified immunity defense, the Court must first determine whether Defendants' conduct violated a constitutional right. See id. Thus, regardless of whether the Court first considers Plaintiff's 1983 claim, or Defendants' qualified immunity defense, the inquiry begins with an assessment of whether a constitutional violation has occurred.

### DeLorenzo

Plaintiff argues that "DeLorenzo, acting under color of state law as the Township's construction code official and zoning officer, engaged in a series of arbitrary and capricious acts that deprived Bezerra of a protected property interest – specifically, in his right to build an addition to

his home at 9 Elena Place and in his right to construct a pre-fab house on his property at 585 Joralemon Street." (Pl. Opp'n Br. at 49).  According to Plaintiff, such deprivation occurred through "a campaign of obstruction and harassment." (Id.).

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Nicholas, 227 F.3d at 138. Thus, while the Fourteenth Amendment protects certain property interests, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." Id. at 140 (quoting Reich v. Beharry, 883 F.2d 239, 243 (3d Cir.1989)).  "Rather, to state a substantive due process claim, 'a plaintiff must have been deprived of a particular quality of property interest.'" Id. (quoting DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598 (3d Cir.1995)).  The determination of whether a particular property interest constitutes this "particular quality" depends on whether the interest is "fundamental" under the Constitution. See, e.g., id.  Thus, in order to prevail on a non-legislative substantive due process claim, Plaintiff must establish that he has a protected property interest to which the Fourteenth Amendment's due process protection applies. See, e.g.,  Hill, 455 F.3d at 235 n. 12; Desi's Pizza, Inc., 321 F.3d at 427; Nicholas,  227 F.3d at 140.

"Ownership is a property interest worthy of substantive due process protection." DeBlasio v. Zoning Bd. of Adjustment for Twp. of West Amwell, 53 F.3d 592, 600 -601 (3d Cir. 1995), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003).  The Third Circuit has also recognized that an individual has the fundamental right to "be free from harassment in their land development efforts." Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253, 268 (3d Cir. 1995).  Thus, as a preliminary matter, the Court finds that

15

Plaintiff's ownership in his two properties (and his land development efforts associated therewith) is a protected property interest.

To succeed on a federal substantive due process claim based on a zoning decision, a plaintiff must first allege executive action that "shocks the conscience." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004); United Artists Theater Circuit v. Twp. of Warrington, 316 F.3d 392, 401 (3d Cir. 2003). Although the "shocks the conscience" test is not precise and depends largely on factual context, "[w]hat is clear is that this test is designed to avoid converting federal courts into super zoning tribunals." Id. The shocks the conscience standard limits due process violations resulting from executive action to cases involving only the "most egregious" and arbitrary official conduct. Eichenlaub, 385 F.3d at 285.

Plaintiff alleges the following actions on behalf of DeLorenzo:

> DeLorenzo improperly delayed inspection and completion of the projects; testified falsely before the Construction Board and Zoning Board about his treatment of Bezerra; deliberately caused the inside of the house to be exposed to water and mold damage; refused to permit Bezerra to secure the house against safety hazards; placed Bezerra in the position of being threatened with fines of $500 a day if he did not immediately correct a purported violation and being simultaneously threatened with arrest if he did the work necessary to cure the purported violation; and issued dozens of summonses to Bezerra for the purpose of harassment and/or intimidation.

(Pl. Opp'n Br. at 49). Based on the reasons that follow, the Court finds that Plaintiff has failed to establish that DeLorenzo engaged in conduct which shocks the judicial conscience.

As a preliminary matter, the Court notes that those cases (in the zoning or land-use context) in which courts have found conduct which shocks the conscience have implicated more than just disagreement about conventional zoning or planning rules. See Dotzel v. Ashbridge, 306 Fed. Appx.

16

798, 801 (3d Cir. 2009) ("To 'shock the conscience,' the alleged misconduct must involve 'more than just disagreement about conventional zoning or planning rules' and rise to the level of self-dealing, an unconstitutional 'taking,' or interference with otherwise constitutionally protected activity on the property."); Maple Properties, Inc. v. Twp. of Upper Providence, 151 Fed. Appx. 174, 179 (3d Cir. 2005) ("Some land use decisions are so egregious that no amount of 'process' can suffice to honor and restore an individual's constitutional property rights. These situations are often typified by corruption, self-dealing, or a concomitant infringement on other fundamental individual liberties, resulting in harms that cannot be adequately rectified by pre- or post-deprivation proceedings."). For instance, courts have found conscience-shocking conduct where the executive engaged in self-dealing or when his or her conduct resulted in a virtual "taking." See, e.g., Conroe Creosoting Co. v. Montgomery County, 249 F.3d 337 (5th Cir. 2001) (finding triable issue of fact as to whether zoning official's conduct in fraudulently converting a tax levy for a $75,000 deficiency into an unauthorized seizure and forcing the sale and destruction of an $800,000 ongoing business "shocks the conscience"). Similarly, attempts to hamper land development in order to interfere with otherwise constitutionally protected activity on the property have been found to meet the shock the conscience test. See, e.g., Obstetrics & Gynecology v. Upper Merion Twp., 270 F. Supp. 2d 633 (E.D. Pa. 2003) (finding viable substantive due process claim where plaintiff alleged that municipal defendant selectively closed plaintiff's medical office for the purpose of blocking the provision of abortion services). Finally, selective enforcement of zoning laws has been found potentially conscience shocking where motivated by ethnic bias. See, e.g., MARJAC, LLC v. Trenk, 2010 WL 1936267, at *4 (3d Cir. May 14, 2010) ("Depending on the gravity, context, and surrounding circumstances, selective enforcement motivated by ethnic bias may constitute arbitrary conduct

17

capable of shocking the conscience.").

By contrast, the misconduct alleged here, even assuming, arguendo, that it in fact occurred, does not rise sufficiently above that at issue in a normal zoning dispute to pass the "shocks the conscience" test.  See, e.g., Maple Properties, Inc. v. Twp. of Upper Providence, 151 Fed. Appx. 174, 180 (3d Cir. 2005) (noting that "the politics and animosities that often animate local decision-making are not matters of constitutional concern). As the Third Circuit explained in Eichenlaub:

> Basically, the Eichenlaubs assert that zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the Eichenlaubs. With the exception of the previously discussed First Amendment retaliation claims, these complaints are examples of the kind of disagreement that is frequent in planning disputes. As counsel for appellants acknowledged during argument, there is no allegation of corruption or self-dealing here. The local officials are not accused of seeking to hamper development in order to interfere with otherwise constitutionally protected activity at the project site, or because of some bias against an ethnic group. There is no virtual "taking" as in Conroe. And as we have previously observed, "every appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but 'it is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983.' "

Eichenlaub, 385 F.3d at 286 (quoting United Artists, 316 F.3d at 402).  Plaintiff makes similar claims of intentional delays and other forms of abuse of power here.  See Pl. Opp'n Br. at 49.  Such claims, while perhaps cognizable under state law, are simply not matters of constitutional concern.  See, e.g., Maple Properties, 151 Fed. Appx. at 180.  The Supreme Court has cautioned lowered

courts to exercise the "utmost care" in expanding the concept of substantive due process.  See Collins v. City of Harker Heights, 503 U.S. 115 (1992).  With this directive in mind, the Court declines to interpret executive action as conscience shocking  without careful analysis and specific reference to the relevant legal authority.  Most of the arguments raised by Plaintiff in support of his substantive due process claim lack any such legal authority.  For instance, Plaintiff argues that providing false testimony to a public board meets the shocks the conscience standard without providing any legal authority or persuasive legal argument in support of such a statement. See Pl. Opp'n Br. at 53.

Perhaps the most egregious claim made by Plaintiff is that DeLorenzo attempted to solicit a bribe.  The relevant caselaw suggests that certain claims of executive corruption and/or self-dealing could meet the shocks the conscience test. See, e.g., Eichenlaub, 385 F.3d at 286.  Nevertheless, the Court finds that Plaintiff's testimony regarding the alleged bribe attempt is insufficient to demonstrate the level of corruption or self-dealing which is so egregious that it shocks the judicial conscience for purposes of a substantive due process violation.  This is particularly so given the specific nature of Plaintiff's testimony regarding the alleged bribe attempt.[9]  For instance, Plaintiff does not testify that he was ever explicitly asked by DeLorenzo for any money in exchange for any

---

[9] Plaintiff testified to the following:

> And that's when he leans up against the car and he just stood there and at that point I felt that he was looking for something.  And it wasn't the seal and I waited. We both were just looking at each other and finally I said I had the feeling this guy was looking for a bribe. And at that point I said, I'm not gonna go there.

(Bezerra Dep Tr. (June 14, 2007) at 64:15-21, Harris Dec., Ex 17).

approvals.  Moreover, Plaintiff's own testimony confirms that his belief that DeLorenzo was implicitly attempting to solicit a bribe was based upon nothing more than a general feeling that DeLorenzo had been acting "really, really strange." (Bezerra Tr. (Dec. 23, 2008) at 30:24-25, Fodera Cert., Ex. E).

Even if a jury found that such conduct occurred in the manner asserted by the Plaintiff, the Court finds that Plaintiff has failed to adequately substantiate any claim of self-dealing.  See, e.g., Development Group, LLC v. Franklin Twp. Bd. of Supervisors, 162 Fed. Appx. 158, 160 (3d Cir. 2006) ("We need not decide whether the type of self dealing that Development Group asserts, if true, would shock the conscience because we agree with the District Court that Development Group has proffered insufficient evidence to support its theory.  Its assertions that the Board of Supervisors rezoned the Miller Farm property to benefit members of the Planning Commission amount to no more than conjecture. 'Mere speculation about the possibility of existence of such facts does not entitle [plaintiffs] to go to trial.'").  At most, the Court finds that the conduct testified to by Plaintiff might evidence improper motive which is insufficient to state a substantive due process claim in the context of a land use dispute. See United Artists, 316 F.3d at 402 ("Land-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives."); see generally Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104-05 (8th Cir. 1992) (finding allegations that city arbitrarily applied a zoning ordinance insufficient to state a substantive due process claim, and noting  that its "decision would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith. . . . A bad-faith violation of state law remains only a violation of state law."); PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 32 (1st Cir. 1991)

("Even assuming that ARPE engaged in delaying tactics and refused to issue permits for the Vacia Talega project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution under a substantive due process label."). Plaintiff cites to no legal authority which suggests otherwise.

In short, DeLorenzo is not accused of seeking to hamper Plaintiff's development projects in order to interfere with otherwise constitutionally protected activity at the site of the projects, or because of some bias against an ethnic group.  Though his conduct may have been unfair, improper from Plaintiff's perspective, or in violation of state law, "there is no evidence of the patently egregious behavior recognized in prior cases to constitute a substantive due process claim." Maple Properties, 151 Fed. Appx. at 180.   Thus, Plaintiff has failed to demonstrate that DeLorenzo's actions have resulted in a constitutional violation.  See, e.g., Saucier, 533 U.S. at 201.  Accordingly, the Court grants Defendants' motion for summary judgment as to Defendant DeLorenzo on the basis of qualified immunity.[10]

Kimble

Plaintiff's Complaint alleges, in pertinent part, the following:

- "As Town Manager, Mr. Kimble was 'in charge of the everyday operation of the township, seeing that all the rules and regulations are carried out.' (Compl., ¶ 130).

- "As Town Manager, Mr. Kimble had supervisory control over

---

[10] It is unclear whether this Court's finding should result in a dismissal of Plaintiff's substantive due process claim as against DeLorenzo based on Plaintiff's failure to establish a cause of action under section 1983 or based on qualified immunity. See Wright v. City of Philadelphia, 409 F.3d 595, 600 (3d Cir. 2005). The parties do not brief this issue. The Third Circuit admittedly has been inconsistent on this issue. See id.  However, the Third Circuit emphasized that "[a]s a practical matter, the outcome will be the same whether we conclude that the officers are immune from suit or instead, that the plaintiff has no cause of action." Id.

the Construction Official's Office." (Compl., ¶ 130).

- "At no time during Mr. Kimble's tenure as Town Manager did the Township of Belleville have an evaluation process for its employees." (Compl., ¶ 131).

- "During Mr. Kimble's tenure as Town Manager there was no policy or procedure in place on how to deal with complaints made by citizens against town officials." (Compl., ¶ 132).

- "With respect to the complaints that Mr. Bezerra has made against Mr. DeLorenzo in this case, Mr. Kimble testified at his deposition that he has no recollection of ever speaking with Mr. Bezerra regarding those complaints." (Compl., ¶ 134).

- "Neither Mr. Kimble – either during his tenure as Town Manager or Mayor – nor the Township of Belleville has ever caused any investigation to be conducted into the complaints made by Mr. Bezerra against Mr. DeLorenzo." (Compl., ¶ 136).

- "During the time period when the above events occurred, the Township of Belleville had a long-standing, unwritten policy or custom in place of accepting as final and true the actions and statements of the Construction official/Zoning Officer and a long-standing., unwritten policy or custom in place of ignoring and/or thwarting citizen complaints lodged against Township of Belleville officials. These policies or customs were the moving force of the violations of plaintiff's constitutional rights." (Compl., ¶ 146).

Thus, there are several theories under which Plaintiff seeks to hold Kimble liable for violating his substantive due process rights. The Court will address each theory, in turn.

First, Plaintiff seeks to hold Kimble liable based upon the Township's policy on dealing with complaints made by citizens against Township officials. Curiously, Plaintiff alleges both that the Township had no such policy in place (Compl., ¶ 132) but later credits his constitutional violations to the Township's "long-standing" policy of "accepting as final and true the actions and statements

22

of the Construction official/Zoning Officer" and "of ignoring and/or thwarting citizen complaints lodged against Township of Belleville officials." (Compl., ¶ 146).  A local government may be subject to § 1983 liability where its policy or custom caused Plaintiff's constitutional deprivations. See, e.g., Monell v. New York City Dept. of Soc. Servs,, 436 U.S. 658, 694 (1978); Brennan v. Norton, 350 F.3d 399, 427 (3d Cir. 2003).  Municipal liability may also stem from a single act performed by an individual with "final policymaking authority" for the municipal entity. City of St. Louis v. Praprotnik, 485 U.S. 112, 123-24, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); see also Brennan, 350 F.3d at 427-28 (stating that a municipal entity may be liable under section 1983 for a decision by a final policymaker, i.e., a decision which is not subject to review); McGovern v. City of Jersey City, No. 98-5186, 2007 WL 2893323, at *14 (D.N.J. Sept.28, 2007) (same).

As a preliminary matter, the Court notes that the Township of Belleville is no longer a defendant in this matter. See Bezerra v. Twp. of Belleville,  2006 WL 1971807 (N.J. Super. App. Div. July 17, 2006).  The question of whether Kimble is an individual with final policymaking authority for the Township involves an analysis of the Town Manager's official functions and duties under state law. See McMillian v. Monroe County, 520 U.S. 781, 786-87 (1997); Cacciatore v. County of Bergen, No. 02-1404, 2005 WL 3588489, at *4 (D.N.J. Dec. 30, 2005). The parties have not adequately briefed this issue.  In any event, regardless of whether Kimble had final policymaking authority for the Township, Plaintiff has failed to come forward with any evidence of the existence of any particular official policy or custom – much less one created by Kimble in his capacity as Town Manager – which caused a deprivation of Plaintiff's constitutional rights. See, e.g., Brown v. Commonwealth of Pa., Dept. of Health Emergency Medical Servs. Training Institute, 318 F.3d 473, 483 (3d Cir. 2003) ("Even if we accept everything Appellants allege as true, they will have still

failed to establish that the City's policies caused constitutional harm.").

Second, Plaintiff seeks to hold Kimble liable based on a theory of respondeat superior. See Compl., ¶¶ 130, 131. Generally, local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See Monell, 436 U.S. at 690-91 (explaining that municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir.2003). Rather, "a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). In this regard, Plaintiff claims that Kimble is liable for the wrongs committed by DeLorenzo based upon (a) his knowledge of such, (b) his failure to investigate the alleged wrongs, and (c) his acquiescence in same.

Plaintiff fails to demonstrate that Kimble was responsible – in his capacity as Town Manager – for investigating complaints made by citizens against town officials. Even assuming, arguendo, that Kimble had a duty to investigate such complaints, in order to show that certain state action caused Plaintiffs' injury, Plaintiffs must establish a "causal link between an alleged unconstitutional act and the harm that a plaintiff claims followed it." Miller v. City of Philadelphia, 174 F.3d 368, 374 n. 5 (3d Cir. 1999). The deprivation alleged in this case stems almost entirely from the Stop Work Order issued by DeLorenzo in his capacity as Construction Code Official. The Court has already found that Plaintiff has failed to show an underlying constitutional violation by DeLorenzo.

Even if Plaintiff had demonstrated that DeLorenzo's actions resulted in a constitutional violation, Plaintiff fails to show that Kimble, in his capacity as Town Manager, had the authority to (a) direct DeLorenzo to remove the Stop Work Order, (b) direct DeLorenzo to stop issuing summonses, or (c) alter the procedures utilized by DeLorenzo in reviewing Plaintiff's construction permit applications. Even if Plaintiff had demonstrated that Kimble had such authority, Plaintiff has failed to come forward with evidence that he actually exercised any authority reaching the Stop Work Order. See, e.g., Wrench Transp. Servs., Inc. v. Bradley, 136 Fed. Appx. 521, 523 (3d Cir. 2005) ("The District Court erred in concluding that the causation analysis turned on whether a New Jersey State Investigator possesses the statutory or de facto authority to dismiss a civil forfeiture action. Regardless of whether a State Investigator possesses that authority, summary judgment must be granted because Malone has not raised a genuine issue of material fact as to whether Bradley actually exercised any authority reaching the forfeiture action.").

In short, Plaintiff has failed to come forward with any evidence establishing a causal connection between Kimble's actions and Plaintiff's alleged injuries. Accordingly, Plaintiff has failed to demonstrate that Kimble's actions have resulted in a constitutional violation. See, e.g., Saucier, 533 U.S. at 201. Defendants' motion for summary judgment as to Defendant Kimble is hereby granted on the basis of qualified immunity.[11]

---

[11] See supra note 16.

Count One – State Law Tort Claim

In addition to his section 1983 claim, Plaintiff asserts a state law tort claim against DeLorenzo.  In particular, Plaintiff claims that DeLorenzo abused the power of his position by maliciously, intentionally, and willfully (a) causing unnecessary delays to the room addition project and the modular home project, (b) refusing to perform a footing inspection in connection with the room addition project, and (c) selectively prosecuting  and persecuting Plaintiff in connection with various aspects of the modular home project, in violation of state law.

Plaintiff originally asserted this claim in state court.  This particular claim was addressed both by the trial court and by the Appellate Division, on appeal.  Having dismissed the sole claim over which this Court has original jurisdiction, and in light of the foregoing, the Court declines to exercise supplemental jurisdiction over this claim pursuant to  28 U.S.C. § 1367(c)(3) and, instead, remands the matter to state court for final adjudication of Plaintiff's state law claim.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988) ("The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.").


**CONCLUSION**

Based on the reasons set forth above, Defendants' motion for summary judgment as to Plaintiff's section 1983 claim is granted.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim and, instead, remands the matter to state court.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's state law tort claim is denied as moot, as is Plaintiff's motion for partial summary judgment as to DeLorenzo's immunity defense pursuant

to the New Jersey Tort Claims Act.

An appropriate Order accompanies this Opinion.


Date:   June 23, 2010                              /s/ Jose L. Linares
                                                   Jose L. Linares
                                                   United States District Judge

27